UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

GREGORY CURRY,                    )      CASE NO.  4: 09 CV 614
                                  )
            Plaintiff,            )      JUDGE JOHN R. ADAMS
                                  )
     vs.                          )
                                  )
DAVID BOBBY, et al.,              )      **MEMORANDUM OF OPINION**
                                  )      **AND ORDER**
                                  )      [Resolving Docs. 34, 36]
            Defendants.           )

        This matter comes before the Court on Defendants' Second Motion for Partial Summary

Judgment on Plaintiff's Claim Requesting an "All-Natural Diet."  (Doc. 34.)  Summary judgment

has already been entered in favor of Defendants and against Plaintiff on Plaintiff's claims

relating to his request that he be permitted to grow uncut dreadlocks while in custody at the Ohio

State Penitentiary ("OSP").  (*See* Doc. 33.)  Defendants' Second Motion for Partial Summary

Judgment is now fully briefed and ready for decision.  Defendants have also filed a motion to

strike Exhibit A attached to Plaintiff's opposition brief.  (Doc. 36.)

        Defendants' Motion to Strike is DENIED but, for the reasons stated below, Defendants'

Motion for Partial Summary Judgment on Plaintiff's Claim Requesting an "All-Natural" diet is

GRANTED.

   **I.  Background**

        The basic background facts have been set forth by the Court in its previous Memorandum

of Opinion and Order, addressing Plaintiff's claim of entitlement to grow dreadlocks.  Plaintiff is

a prisoner at OSP, an Ohio maximum security prison, serving a prison sentence for eight felony

convictions, including aggravated murder, aggravated robbery and assault.  Plaintiff brought this action, *pro se*, pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.*, against David Bobby, the prison warden, and Gary Sims, the religious services administrator at the Ohio Department of Rehabilitation and Correction ("ODRC").  Plaintiff claims violations of RLUIPA and various constitutional rights.

Relevant here are Plaintiff's allegations that Defendants refused him the religious accommodation of an "all-natural" diet, adherence to which Plaintiff claims is part of his Rastafarian religion.  An "all-natural," or "I-tal," diet as Plaintiff seeks includes foods which are in the most natural state possible for human consumption; they should be processed as little as possible.  For example, rice should be unbleached and fruits and vegetables should be raw when possible but always uncanned.  Plaintiff claims his request for such a diet was initially approved in 2006 but, later, the accommodation was denied.[1]

Defendants submit evidence that although Plaintiff's institutional chaplain initially recommended that Plaintiff be afforded his request for an "all-natural" diet to the extent possible, the OSP committee that reviewed his request recommended that the dietary request be denied on the basis that the request was logistically impossible and cost-prohibitive and that Plaintiff already had access to vegetarian food options.  (*See* Sims Declaration, attached as Ex. C to Doc. 16.)  Accordingly, Defendant Bobby denied Plaintiff's request for an all-natural diet, and

---

[1]Read liberally, Plaintiff's Complaint alleges violations of the First, Eighth and Fourteenth Amendments.  Plaintiff alleges Defendants' conduct in overturning his dietary accommodation constitutes cruel and unusual punishment under the Eighth Amendment and violates his "rights to religious freedom and equal protection" under the First and Fourteenth Amendments.  Plaintiff seeks injunctive relief and damages.

Defendant Sims affirmed the denial on administrative appeal.

As noted in the Court's previous summary judgment decision, although Plaintiff was denied the specific accommodations he requested, the undisputed evidence is that he may practice his Rastafarian religion at OSP in the following ways.  He may:  (1) visit individually with a minister or spiritual leader; (2) receive religious publications; (3) engage in individual prayer, study and reflection; (4) partake of vegetarian diet options available from food service, including meatless entrees, vegetables and fruit; and (5) grow his hair to any length and braid it, but not wear dreadlocks.

### II.  Legal Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The burden of establishing that there is no genuine issue of material fact lies with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In evaluating a motion for summary judgment, the court must construe the evidence and draw all reasonable inferences in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the non-moving party.  The non-moving party may not simply rely on its pleadings; rather it must "produce evidence that results in a conflict of material fact to be resolved by a jury."  *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1996).  A fact is "material" only if its resolution will affect the outcome of the lawsuit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242248 (1986).  Moreover, Fed. R. Civ. P. 56(e)(2) provides:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

### III.  Analysis

Defendants contend there are no genuine issues of material fact and they are entitled to judgment as a  matter of law "on Plaintiff's claims concerning his request for an all-natural, vegetarian diet."  (Def. Br. at 3.)

> RLUIPA provides:
>
> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that the imposition of the burden on that person–
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).

In general, prison regulations that impinge on inmates' constitutional rights are subject to the rational basis test.  *See Turner v. Safley*, 482 U.S. 78, 89-90 (1987).  A regulation or decision which impinges on a prisoner's rights will be upheld if it is merely "reasonably related" to legitimate penological interests.  *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987).  Four factors are relevant in determining whether a regulation is reasonable: (1) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest it serves; (2) whether there are alternative means of exercising the right that remain open to

4

prisoners; (3) the impact that accommodation of the asserted constitutional right will have on guards and other inmates; and (4) the absence of ready alternatives as evidence of the reasonableness of a prison regulation. *Turner*, 482 U.S. at 89-90.

Defendants contend Plaintiff has no claims under the First Amendment and RLUIPA. Defendants submit evidence of purchases Plaintiff made at the prison commissary for the period of May through May 2009, demonstrating that Plaintiff purchased the following items: ramen noodles, chips, ice cream, animal crackers, processed cheese squeeze, cheese crackers, barbeque sauce, hot sauce, pickles, and Marzetti ranch salad dressing. (Def. Br., Ex. B.) Defendants contend these purchases, containing ingredients that are not "all-natural," belie Plaintiff's position that adhering to an "all-natural" diet constitutes Plaintiff's sincerely-held religious belief. Defendants further point to evidence that a Rastafarian religious leader, Ras Miles Jacob Marley, indicated that it would be permissible for Plaintiff to eat "cold cuts," another item that is not "all-natural." (*See* Doc. 3-3.)

Second, Defendants contend, their refusal to provide Plaintiff an "all-natural" diet does not substantially burden Plaintiff's religious practice because (as noted above and in the Court's previous opinion on Plaintiff's dreadlocks claims) Plaintiff has numerous alternative means to practice his Rastafarian religion at the OSP, including partaking of the available vegetarian diet.

Third, Defendants contend, there are compelling interests for refusing Plaintiff an "all-natural" diet. Specifically, Defendants submit affidavit testimony of ODRC dietician, Theresa Bell, who states that the cost of providing a vegetarian diet consisting of all natural, unprocessed foods would be significantly higher per inmate than the current costs of providing a regular vegetarian diet because fresh, unprocessed fruits and vegetables spoil rapidly and cannot be

5

stored for long periods of time.  (Def. Br., Ex. A, Declaration of Theresa Bell, ¶¶ 8, 9.)  Bell states that inmates who request a vegetarian diet are regularly provided with vegetable side dishes including potatoes, salads, coleslaw, cooked canned vegetables and canned fruit.  She states that fresh fruit "is not regularly provided all inmates because it constitutes a security issue; fresh fruit can be fermented and used to make prison alcohol called 'hooch' and it can be used to plug drains in inmates' cells."  (*Id*., ¶ 6.)

Defendants' evidence is sufficient to demonstrate that their conduct vis-a-vis Plaintiff comports with RLUIPA and rational basis review.  The evidence demonstrates legitimate, penological justifications for denying Plaintiff an "all-natural" diet.  Offering Plaintiff only the regular vegetarian option, rather than a special "all-natural" vegetarian option, saves the penological institution money and trouble as well as lessens potential security concerns caused by the provision of fresh fruit.  Prison security and cost control are both legitimate penological concerns.  *See Cutter v. Wilkinson*, 544 U.S. 709, 725, n. 13 (2005); *Williams v. Wilkinson*, Case No. 96-3715, 1997 WL 809971, at *3 (6th Cir. Dec. 18, 1997).  Plaintiff, moreover, is not completely deprived of fruits and vegetables but is provided canned fruit and cooked canned vegetables.  Further, in accordance with his religious beliefs, Plaintiff may partake of standard vegetarian options.  And many alternate avenues exist for Plaintiff to practice his religion at OSP.

Defendants' evidence also shows that Plaintiff's exercise of his religion is not substantially burdened.  Plaintiff's commissary purchases and the advice provided by religious leader, Ras Miles Jacob Marley, show that Plaintiff's religious beliefs do not prevent him from

eating foods that are not "all-natural" when natural options are not available.[2]

Plaintiff, in response, does not proffer evidence sufficient to create a genuine issue of material fact as to his RLUIPA and First Amendment claims.  As to RLUIPA, Plaintiff does not proffer evidence sufficient to create a genuine issue that refusing him an "all-natural" diet creates a "substantial burden" on his sincerely-held religious beliefs.  Indeed, although Plaintiff attempts to disavow Ras Miles as his religious leader and states that there is no proof he actually ate the items he purchased at the commissary, Plaintiff concedes in his opposition that, under his religion, "temporary exceptions" to an all-natural diet exist.  (Pltf. Opp. at 3.)

Further, Plaintiff does not proffer evidence creating a material issue as to Defendants' asserted justifications for denying him an "all-natural" diet.  Courts must defer to the expertise of prison officials in matters involving prison administration in the absence of "substantial evidence" indicating that the officials have exaggerated their response.  *Flagner v. Wilkinson*, 241 F.3d 475, 483 (6th Cir. 2001).  Plaintiff contends Defendants' justifications of cost and security are "exaggerated."  But other than his own assertions, Plaintiff's only evidence to support this position is five prison menus, for the weeks of August 23, 2009 through September 20, 2009, attached as Exhibit A to his brief.  These menus list fresh fruit and other seemingly "all-natural" items in some places as menu options.  According to Plaintiff, these menus show that Defendants are able to provide him an "all-natural" diet.[3]  However, as Defendants point out

---

[2]Plaintiff would rather have an "all-natural" diet consisting of fresh fruits and vegetables. However, as the Sixth Circuit has recognized, the fact that a plaintiff "may dislike [an] alternate diet available does not render it unreasonable or legally deficient."  *Williams*, 1997 WL 809971, at *3.

[3]As noted above, Defendants have moved to strike the menus as inadmissible hearsay on the ground that they have not been properly identified and authenticated; this motion is denied.

in their reply, the fact that natural food options are sometimes available on the general menu does not contradict Defendants' evidence that such items are more costly to provide and present greater security concerns (particularly with respect to maximum security prisoners such as Plaintiff).  Thus, the menus themselves are insufficient to create a material issue that Defendants exaggerated their justification for refusing to provide Plaintiff with a diet containing *only* the more costly and more security-threatening "all-natural" foods.  Furthermore, the menus do not contradict Bell's assertion that fresh fruit is not regularly provided to the general inmate population.

Plaintiff has failed to proffer evidence sufficient to avoid summary judgment on his RLUIPA and First Amendment claims.

Although Defendants' present motion does not specifically address Plaintiff's dietary claims in the context of Plaintiff's equal protection challenge, summary judgment is also appropriate on the equal protection claim.  The crux of Plaintiff's equal protection challenge is that Defendants approved for him a dietary accommodation and later reviewed and revoked that accommodation but did not review accommodations made to other religious groups.  Plaintiff also states in his opposition brief:  "Hindus currently receive fresh fruit and vegetables."  (Pltf. Opp. at 3.)  Although the Sixth Circuit has recognized that "policies infringing on religious freedoms may be found unreasonable where accommodations are made for others," *Turner v. Bolden*, Case No. 00-1884, 2001 WL 493415 (6th Cir. Apr. 30, 2001), in order to succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of

8

intentional and purposeful discrimination." *Ephraim v. Angelone*, 313 F.Supp.2d 569, 573 (E.D. Va. 2003).  In this regard, the plaintiff must provide "more than a scintilla of evidence of discrimination in the enforcement of prison regulations." *Johnson v. Collins*, No. 3:07 CV 211, 2009 WL 1543811, at *6 (N.D. Ohio 2009).  Once the plaintiff makes this showing, the court then proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny.  *Ephraim*, 313 F.Supp.2d at 573.

Here, Plaintiff's allegations, even viewed in the light most favorable to him, fall short of the threshold showing of disparate treatment and intentional discrimination.  Plaintiff fails to allege that any other inmate, similarly situated to him, made a similar request for an "all-natural" diet and was granted such request.[4]  Absent such allegation, Plaintiff has no equal protection claim.  *See Williams*, 1997 WL 809971, at *4, n.3 (affirming summary judgment on equal protection claim where plaintiffs failed to make initial showing that similarly-situated groups were treated differently).  Furthermore, as discussed above, Defendants' conduct in denying Plaintiff an "all-natural" diet satisfies rational basis review.

Defendants also do not address Plaintiff's dietary claims under the Eighth Amendment, but such claim fails as a matter of law.  The Sixth Circuit has recognized that the Eighth Amendment requires prison officials to provide inmates with a diet that is nutritionally adequate for the maintenance of normal health.  *See Cunningham v. Jones*, 567 F.2d 653, 656 (6th Cir. 1977).  The food served need not be appetizing to the prisoner; it must simply be prepared and served in a sanitary environment and be adequate to meet an inmate's essential nutritional needs.

---

[4]Plaintiff's vague allegations that accommodations made to other groups were not reviewed and that "Hindus . . . receive fresh fruits and vegetables" – even assuming such allegations are true – do not plead such facts.

*Kelly v. McLain*, No. 08 CV 10448, 2008 WL 4791951, at *3 (E.D. Mich. Oct. 28, 2008).

Plaintiff's diet in no ways runs afoul of the Eighth Amendment.

### IV.  Conclusion

For all of the reasons stated above, all of Plaintiff's claims based on Defendants' refusal

to provide him an "all-natural" diet are insufficient as a matter of law.[5]  Accordingly,

Defendants' Second Motion for Partial Summary Judgment on Plaintiff's Claim Requesting an

"All-Natural Diet" is GRANTED.  (Doc. 34.)

IT IS SO ORDERED.


Date:  March 25, 2010                     _____/s/ John R. Adams_____
                                          JOHN R. ADAMS
                                          United States District Judge

---

[5]Given this determination, it is not necessary to address Defendants' arguments that
Plaintiff cannot recover damages and that Defendants are entitled to qualified immunity.